**Elaine M. WESELY, Appellant,**

v.

**A. David FLOR, DDS, et al., Respondents.**

**No. A10–0478.**

Supreme Court of Minnesota.

Sept. 7, 2011.

Terry L. Wade, Brandon Thompson, Robins, Kaplan, Miller & Ciresi L.L.P., Minneapolis, Minnesota; and Michael A. Zimmer, M.A. Zimmer Law, Minneapolis, MN, for appellant.

William M. Hart, Barbara A. Zurek, Melissa Dosick Riethof, Meagher & Geer, P.L.L.P., Minneapolis, MN, for respondent.

Robert J. King, Jr., Kay Nord Hunt, Lommen, Abdo, Cole, King & Stageberg, P.A., Minneapolis, MN, for amicus curiae Minnesota Association for Justice.

Charles E. Lundberg, Mark R. Whitmore, Steven P. Aggergaard, Bassford Re-

mele, P.A., Minneapolis, MN, for amici curiae Minnesota Hospital Association and MMIC Group/MMIC Insurance, Inc.

## OPINION

### ANDERSON, G. BARRY, Justice.

Appellant Elaine Wesely alleges that she received negligent care from respondent dentist A. David Flor. In her dental malpractice action, Wesely submitted an affidavit disclosing the opinions of a doctor of internal medicine, not a dentist, in an attempt to satisfy the statutory requirement of expert disclosure. *See* Minn.Stat. § 145.682, subds. 2, 4 (2010). Flor moved to dismiss the claim under Minn.Stat. § 145.682, subd. 6 (2010), asserting that the affidavit was deficient because an internist is not a dentist and was not qualified to be an expert in Wesely's dental malpractice action. During the 45–day safe-harbor period—during which a plaintiff may "serve upon the defendant an amended affidavit or answers to interrogatories that correct the claimed deficiencies" of the affidavit of expert disclosure, Minn.Stat. § 145.682, subd. 6(c)(3)—Wesely's counsel submitted a second affidavit identifying a dentist-expert and disclosing his opinions. The district court granted Flor's motion to dismiss, concluding that because the second affidavit identified a different expert, the second affidavit did not "amend" the original affidavit. Therefore, the second affidavit could not correct the deficiencies of the first affidavit. The court of appeals affirmed. Because we conclude that the second affidavit was an "amended affidavit," which was capable of correcting the alleged deficiencies of the first affidavit, we reverse and remand.

This case comes on appeal from a successful motion to dismiss. Wesely alleges the relevant facts in her memorandum and affidavits in opposition to Flor's motion to dismiss. On February 23, 2005, Elaine Wesely sought dental care from A. David Flor. Wesely alleged that a power disruption distracted Flor and caused him to damage Wesely's front teeth and lip with his drill. Wesely claimed that while Flor attempted to repair the damage to the teeth and lip, Flor applied constant pressure to the left side of Wesely's jaw by resting his fingers and hand on her jaw. Wesely was unable to move her jaw, and she alleges Flor used his hands to move her jaw in the directions that she was unable to perform on her own. As a result of all the prior actions, Wesely claimed that Flor displaced her jaw and caused temporal mandibular dysfunction resulting in persistent pain and disfigurement. Wesely also claimed that Flor had prior knowledge of the impending power disruption and that he acted negligently by scheduling her appointment during that time. Wesely also asserted that Flor was negligent in allowing the drill to cause the initial damage and was negligent in his corrective actions, causing further damage.

In February 2009, Wesely timely commenced this action by serving Flor with her summons, complaint, and affidavit of expert review, as required under Minn. Stat. § 145.682, subd. 2.[1] Within 180 days of commencing the professional negligence action, the plaintiff must serve the defendant with a second affidavit identifying the experts plaintiff expects to call at trial and summarizing the experts' expected testimony. *Id.*

Wesely's lawyer withdrew from representation and, after attempting to find an-

---

1. Various entities were served on different dates. The parties do not dispute that the action was timely commenced.

other lawyer for Wesely, returned her file to Wesely on August 3, 2009. Because the expert used by Wesely's former lawyer would not work with a pro se party, Wesely needed to find a new expert before the 180–day deadline expired.

Wesely ultimately drafted an affidavit identifying and summarizing the expected testimony of Dr. Arvin Vocal, a doctor of internal medicine and an individual familiar with the circumstances of her case and condition.[2] Wesely served this affidavit on August 12, 2009, within the 180–day deadline.

On September 11, 2009, Flor served Wesely with a motion to dismiss the claim based on deficiencies in Wesely's affidavit identifying Dr. Vocal as her expert. One of the alleged deficiencies was that Dr. Vocal, as a doctor of internal medicine, was not qualified to testify as an expert in a dental malpractice case. Minnesota law provides a 45–day safe-harbor period following service of the motion to dismiss to submit an amended affidavit to correct the claimed deficiencies of the original affidavit. *Id.*, subd. 6. Within the 45–day safe-harbor period, but after the expiration of the initial 180–day deadline, Wesely's new attorney served Flor with an affidavit identifying and summarizing the expected testimony of Dr. Lingle, a dentist. Much of the information in the affidavit identifying Dr. Lingle was the same as the information in the affidavit identifying Dr. Vocal. At the motion hearing, Wesely conceded that she was required to submit an affidavit from a dentist to maintain her professional negligence claim under section 145.682,[3] but argued that the affidavit identifying Dr. Lingle cured this deficiency.

The district court concluded that the first affidavit did not identify a proper expert. Also, the court concluded that the affidavit identifying Dr. Vocal was not "amended" by the affidavit identifying Dr. Lingle because the second affidavit identified a completely different expert. Therefore, the court dismissed the action because Wesely did not properly correct the deficiencies in the affidavit identifying Dr. Vocal. The court of appeals affirmed. *Wesely v. Flor*, 791 N.W.2d 583, 585 (Minn. App.2010).

■ "We review a district court's dismissal of an action for procedural irregularities under an abuse of discretion standard. But where a question of law is present, such as statutory construction, we apply a de novo review." *Brown–Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209, 215 (Minn.2007) (citations omitted). The issue in this case is the interpretation of Minn.Stat. § 145.682, and therefore we review the district court and court of appeals decisions de novo.

I.

In order to discuss the parties' arguments, we first need to outline the statutory framework that governs medical malpractice claims. To maintain a medical malpractice claim, Minn.Stat. § 145.682 requires that a plaintiff serve two affidavits.

---

**2.** Wesely claimed at oral argument that Dr. Vocal was Wesely's treating physician. In Wesely's memorandum in opposition to Flor's motion to dismiss, the facts of which are sworn to in an affidavit, Wesely alleged that Dr. Vocal was "familiar with the circumstances of the case and her condition," but does not explicitly state that Dr. Vocal was Wesely's treating physician.

**3.** In response to the district court's question about whether the original affidavit was deficient, Wesely's counsel stated, "On the issue of liability, I agree with the defense: You need a dentist to review this file. On the issue of damages, I don't necessarily agree with them .... but on the issue of liability, [Wesely] selected the wrong expert."

The first affidavit must be served with the summons and complaint, or within 90 days of service of the summons and complaint if the affidavit could not be obtained before the statute of limitations expired. *Id.,* subds. 2, 3 (2010). This affidavit, the affidavit of expert review, "must be by the plaintiff's attorney" and must state that the attorney has reviewed the case with an expert and that the expert believes the case has merit. *Id.,* subd. 3(a). Flor does not claim that Wesely's affidavit of expert review was deficient.

The second affidavit must have more information than the first. *See id.,* subd. 4(a). The second affidavit, the affidavit of expert disclosure, must (1) be signed by the plaintiff (or her attorney) and all the experts, (2) identify the experts that are expected to testify, (3) provide "the substance of the facts and opinions to which the expert is expected to testify," and (4) provide a summary of the grounds of each opinion. *Id.*

The plaintiff must serve the affidavit of expert disclosure within 180 days of commencing the action. *Id.* The defendant can move for dismissal if there are "deficiencies in the affidavit." *Id.,* subd. 6(c). Dismissal with prejudice is mandatory, provided that:

> (1) the motion to dismiss the action identifies the claimed deficiencies in the affidavit or answers to interrogatories;
>
> (2) the time for hearing the motion is at least 45 days from the date of service of the motion; and
>
> (3) before the hearing on the motion, the plaintiff does not serve upon the defendant an amended affidavit or answers to interrogatories that correct the claimed deficiencies.

*Id.*

In 2002, the Legislature added the safe-harbor provision to section 145.682. *See*

*Broehm v. Mayo Clinic Rochester,* 690 N.W.2d 721, 725 n. 1 (Minn.2005). Before the safe-harbor provision was added, we interpreted section 145.682 in several cases. We concluded that "strict compliance with the disclosure requirements of the statute" was required. *Lindberg v. Health Partners, Inc.,* 599 N.W.2d 572, 576 (Minn.1999) (discussing *Stroud v. Hennepin Cnty. Med. Ctr.,* 556 N.W.2d 552 (Minn.1996) and *Sorenson v. St. Paul Ramsey Med. Ctr.,* 457 N.W.2d 188 (Minn. 1990)). We noted that "the statute may have harsh results in some cases, [but] it cuts with a sharp but clean edge." *Lindberg,* 599 N.W.2d at 578. The Legislature added the safe-harbor provision because of a "perception that meritorious medical malpractice claims were being dismissed where the expert disclosure affidavit was only missing some technical information that could be corrected." *Brown–Wilbert, Inc. v. Copeland Buhl & Co.,* 732 N.W.2d 209, 217 (Minn.2007). This is our first opportunity to interpret the safe-harbor provision of section 145.682.

## II.

Wesely argues that the affidavit of expert disclosure that identified Dr. Lingle was a valid amended affidavit that cured any alleged deficiencies of the affidavit that identified Dr. Vocal. Flor argues, inter alia, that (1) Wesely's first affidavit was so deficient that Wesely is not permitted to utilize the safe-harbor provision, and (2) Wesely's second affidavit of expert disclosure was not an "amended affidavit" because it substituted experts. We find neither of Flor's arguments persuasive.

### A.

■ Flor first argues that Wesely may not utilize the safe-harbor provision of section 145.682. The court of appeals and the district court did not address this argu-

ment because Flor makes this argument for the first time to our court. Because the parties have fully briefed this legal issue, and in the interests of judicial economy, we choose to address it.

### 1.

At the outset, we note that we see no language in the statute—and Flor does not cite to any—that supports Flor's argument that the safe-harbor provision does not apply here.

The district court must dismiss the claim as long as three elements are satisfied:

(1) the motion to dismiss the action identifies the claimed deficiencies in the affidavit or answers to interrogatories;

(2) the time for hearing the motion is at least 45 days from the date of service of the motion; and

(3) before the hearing on the motion, the plaintiff does not serve upon the defendant an amended affidavit or answers to interrogatories that correct the claimed deficiencies.

Minn.Stat. § 145.682, subd. 6(c). The statute plainly states that the safe-harbor period applies every time the defendant moves to dismiss under Minn.Stat. § 145.682, subd. 6. The statute does not limit the safe-harbor period to only certain types of deficiencies. Flor moved the court for mandatory dismissal of Wesely's claim under Minn.Stat. § 145.682, subd. 6. Therefore, under the statute, Wesely may utilize the safe-harbor period.

### 2.

Flor relies exclusively on *Brown–Wilbert, Inc. v. Copeland Buhl & Co.*, 732 N.W.2d 209 (Minn.2007), to support his

argument that Wesely may not utilize the safe-harbor period. In *Brown–Wilbert*, we discussed section 145.682 in our analysis of Minn.Stat. § 544.42 (2010), a similar statute that deals with professional, non-medical malpractice. 732 N.W.2d at 217. We concluded that the purpose of the safe-harbor provisions in both statutes was the same and a plaintiff could not utilize the safe-harbor period in section 544.42 if the affidavit of expert disclosure "provides no significant information." 732 N.W.2d at 217. We then outlined the requirements for when an affidavit of expert disclosure would provide sufficient information to utilize the safe-harbor period. *See id.* at 217–19.

*Brown–Wilbert* is distinguishable on both the law and the facts and does not control here. First, in *Brown–Wilbert*, we were considering a different statute with a different safe-harbor provision.[4] Under the statute at issue in *Brown–Wilbert*, the *district court* triggers the start of the safe-harbor period when the court gives the plaintiff notice that the expert-disclosure affidavit contains deficiencies. Minn.Stat. § 544.42, subd. 6(c). The notice given by the court must provide "specific findings as to the deficiencies of the affidavit...." *Id.* Because the court triggers the start of the safe-harbor period by reviewing the affidavit of expert disclosure and issuing specific findings of the deficiencies, it is appropriate to allow the court to decline to trigger the safe-harbor period when an affidavit is materially insufficient. Here, under section 145.682, the safe-harbor period is an automatic, 45–day delay before the court hears any arguments or makes any decisions regarding deficiencies in the

4. In fact, at the court of appeals, Flor recognized that the safe-harbor provisions of the two statutes "contain altogether different language" and that "although courts interpreting section 544.42 frequently look to cases involv-

ing section 145.682 for clarification, courts have not relied upon section 544.42 to clarify section 145.682." We agree that there are differences between the affidavit requirements found in the two statutes.

affidavit. Applying the rule in *Brown–Wilbert* to this statute would require the court to conclude that the plaintiff was unable to correct the deficiencies in the original affidavit *only after* the 45–day period has run and *after* the plaintiff has already attempted to correct deficiencies in the affidavit of expert disclosure. Such a process makes no sense, would result in wasted time for all parties and for the court and, perhaps most importantly, is not mandated by the statutes at issue here.

Second, and more importantly, the information disclosed in this case was substantial compared to the insignificant amount of information disclosed in *Brown–Wilbert*. In *Brown–Wilbert*, the plaintiff's counsel identified two experts and merely stated that "[b]oth experts are expected to testify as to the conclusions set forth in the Complaint, based upon the facts alleged in the Complaint.... Discovery is continuing." 732 N.W.2d at 214. But here, the affidavit of expert disclosure identifying Dr. Vocal provided five pages of information from a doctor of internal medicine who was familiar with Wesely's condition. Much of the information in the affidavit identifying Dr. Vocal carried forward into the affidavit identifying Dr. Lingle. Therefore, *Brown–Wilbert* does not support Flor's argument for dismissal.

3.

Flor and amici curiae Minnesota Hospital Association and MMIC Group/MMIC Insurance, Inc., also argue that if the safe-harbor provision applies, plaintiffs could submit a "placeholder" affidavit of expert disclosure with no information in order to take advantage of the 45–day safe-harbor period.

We need not decide, and do not decide, whether a plaintiff could submit an affidavit of expert disclosure with no information and still utilize the safe-harbor period; those are not the facts presented here. But we note that there are at least three reasons why these fears are misplaced and plaintiffs would be unlikely to submit affidavits with no information as a placeholder for the purpose of triggering the safe-harbor period.

First, the statute requires that the affidavits signed by the plaintiff or the plaintiff's attorney must be "made in good faith" or the signing individual is responsible for fees, costs, and disbursements. Minn.Stat. § 145.682, subds. 5, 7 (2010). Serving an affidavit with no information would presumably raise the issue of whether the incomplete affidavit was a good faith attempt to comply with the statutory requirements, and could therefore result in sanctions. Second, submitting a placeholder affidavit is a risky tactic for the purpose of gaining a relatively brief extension. A placeholder affidavit would likely have numerous deficiencies, and a plaintiff, recognizing that he or she was "out of chances," would then need to submit an amended affidavit without deficiencies to survive the motion to dismiss. Third, before the affidavit of expert disclosure is due, a plaintiff must have already served an affidavit of expert review, which must state that the plaintiff has reviewed the case "with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial," and that in the expert's opinion, the defendant acted negligently. Minn. Stat. § 145.682, subd. 3. Therefore, a plaintiff has already been in contact with an expert, and would usually have no reason to use a placeholder affidavit. For these reasons, we do not agree that the common sense statutory interpretation that we announce here will trigger submission of numerous placeholder affidavits for the purpose of gaining an additional 45 days to comply with the expert disclosure statute.

The Legislature, of course, can appropriately amend section 145.682 to deal with this issue, if plaintiffs do consistently use purposefully deficient affidavits.

■ To summarize, there is no statutory or precedential basis for denying Wesely the ability to utilize the safe-harbor period in Minn.Stat. § 145.682, subd. 6(c). Moreover, we decline to adopt a rule that an affidavit that identifies a non-qualifying expert could never be corrected during the safe-harbor period.[5]

### B.

■ Next, Flor argues that substituting a dentist for an internist is not an "amended affidavit" as required by Minn. Stat. § 145.682. The district court and the court of appeals agreed with Flor. The court of appeals stated that, "[b]ecause a valid affidavit must be sworn to or affirmed by the affiant, a statement in a valid affidavit cannot be amended by the affidavit of another affiant; a second affiant cannot swear or affirm that the changes in an affidavit are the truthful testimony of the first affiant." *Wesely*, 791 N.W.2d at 587. We disagree with the court of appeals.

It is true enough, as Flor argues, that the method of curing deficiencies in a plaintiff's affidavit of expert disclosure is statutorily limited to "an amended affidavit or answers to interrogatories." Minn.Stat. § 145.682, subd. 6(c)(3). But we need not and do not decide whether one expert-affiant can "amend" the affidavit of a different expert-affiant, because we conclude that the affidavits at issue are authored by Wesely and her counsel and not by the experts. Therefore, Wesely's affidavit identifying Dr. Vocal may be amended by Wesely's attorney's affidavit identifying Dr. Lingle.

The statute allows a plaintiff, or his or her attorney, to be the affiant in the affidavit of expert disclosure. According to the statute, the affidavit of expert disclosure must

> be signed by each expert listed in the affidavit and by the plaintiff's attorney and state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion.

*Id.*, subd. 4(a). Both the expert and the plaintiff's attorney must sign the affidavit, but the statute does not explicitly say which of these two individuals must be the affiant.[6] In this case, the affidavits submitted identify Wesely or Wesely's attorney as the affiants. For instance, the first

5. Additionally, Flor's argument that Wesely cannot use the safe-harbor provision may conflict with Minn.Stat. § 145.682, subd. 4(b), which states that "[n]othing in this subdivision may be construed to prevent either party from ... substituting other expert witnesses." We do not reach this issue because we conclude that there is no statutory or precedential basis to deny Wesely the ability to use the safe-harbor provision.

6. Amici curiae Minnesota Hospital Association and MMIC Group/MMIC Insurance Inc. argue that our court has conventionally described affidavits as belonging to the experts, rather than the attorneys. Case law is actually mixed on this issue. *Compare Stroud v. Hennepin Cnty. Med. Ctr.*, 556 N.W.2d 552, 555 (Minn.1996) (stating that section 145.682 requires "an affidavit *by the plaintiff's attorney*" that discloses the details of the expert testimony expected at trial (emphasis added)); *and Sorenson v. St. Paul Ramsey Med. Ctr.*, 457 N.W.2d 188, 190 (Minn.1990) ("[D]efendants contend that *plaintiffs' second affidavit* did not provide sufficient detail ...." (emphasis added)); *with Anderson v. Rengachary*, 608 N.W.2d 843, 848 (Minn.2000) (referring to "Dr. Goodman's affidavit of expert identification"). At least one opinion uses the two descriptions interchangeably. *See Teffeteller v. Univ. of Minn.*, 645 N.W.2d 420, 426, 427

affidavit of expert disclosure begins: "I, Elaine M. Wesely, being first duly sworn, depose and state as follows...." The second affidavit of expert disclosure begins: "I represent Plaintiff Elaine Wesley [sic] in this litigation." The experts are referred to in the third person. In this case, Wesely and her attorney, not the experts, are the affiants. Therefore, we conclude that Flor's characterization of the affidavits—that Dr. Lingle is impermissibly amending the affidavit of Dr. Vocal—is inaccurate. Instead, it is Wesely who is amending her own affidavit through counsel.

Additionally, as to whether the second affidavit may amend the first affidavit, we conclude that it is of no significance that the first affiant was Wesely acting pro se, and the second affiant was Wesely's attorney.[7] For purposes of affidavit submission under Minn.Stat. § 145.682, subd. 4, the plaintiff and plaintiff's counsel may amend each other's affidavits. The affidavit of expert disclosure is to identify the experts that "*plaintiff* expects to call." *Id.*, subd. 4(a) (emphasis added). The purpose of the affidavits is to describe the plaintiff's case, and the attorney represents the plaintiff in developing and presenting that case. Additionally, a plaintiff acting pro se is "bound by" the provisions of section 145.682 to the same extent as an attorney. *Id.* subd. 5. We conclude that Wesely's attorney, who had taken over for Wesely in handling her case, was acting on Wesely's behalf and is able to amend her affidavit indicating the testimony that the plaintiff expects to elicit at trial.

After concluding that the second affidavit identifying Dr. Lingle, the dentist, may amend the original affidavit identifying Dr.

Vocal, the internist, the only remaining issue is whether the second affidavit is actually an amended affidavit. We conclude that the second affidavit was a proper amendment of the first affidavit.

■ An amended affidavit is an affidavit that formally alters the original affidavit. *See Black's Law Dictionary* 94 (9th ed.2009) (defining "amend" as "[t]o change the wording of; specif., to formally alter (a statute, constitution, motion, etc.) by striking out, inserting, or substituting words <amend the legislative bill>"); *see also Webster's Third New International Dictionary* 68 (1976) ("[T]o alter (as a motion, bill, or law) formally by modification, deletion, or addition."). The affidavit identifying Dr. Lingle amended the affidavit identifying Dr. Vocal because the second affidavit formally altered the original affidavit by changing some of the language and identifying a new expert.

We conclude that Minn.Stat. § 145.682 allows Wesely to submit an affidavit identifying a new expert in order to cure the deficiencies of her initial affidavit of expert disclosure. We take no position on whether the second affidavit actually cured the deficiencies claimed by Flor in his motion to dismiss. We reverse the district court's granting of Flor's motion to dismiss on these grounds and remand the case to the district court for further proceedings.

Reversed and remanded.

PAGE, J., took no part in the consideration or decision of this case.

---

(Minn.2002). Therefore, our case law does not alter our interpretation of the statute and the affidavits actually submitted.

7. We do not interpret Flor's brief or position during oral argument as advancing this argument. But we consider the issue briefly because it is directly implicated by our conclusion that the plaintiff and her attorney are the affiants for the affidavits in this case.